## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CLAUD P.,[1] | ) | |
| | ) | No. 19 CV 8354 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security,[2] | ) | |
| | ) | October 8, 2021 |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Claud P. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). The parties filed cross motions for summary judgment. For the following reasons, Claud's motion is granted, and the government's is denied:

### Procedural History

Claud filed his DIB application in September 2016 alleging disability beginning on December 31, 2013, because of arthritis in his lower back, type-2 diabetes, heart failure, high blood pressure, high cholesterol, anxiety, and depression. (Administrative Record ("A.R.") 64, 163-64.) After his application was

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

[2] Kilolo Kijakazi is the current Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this case.

denied initially and again upon reconsideration, (id. at 62, 88), Claud sought and received a hearing before an administrative law judge ("ALJ"), (id. at 102-06, 123). Claud and a vocational expert ("VE") testified at the September 2018 hearing, (id. at 30-61), and the ALJ issued a decision two months later concluding that Claud was not disabled, (id. at 15-24). The Appeals Council denied Claud's request for review, (id. at 1-3), and the ALJ's denial of benefits thus became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Claud then filed this action seeking judicial review of the decision, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Facts

Claud alleges that he suffers from physical and mental impairments. Because the current review centers on the government's conclusions concerning Claud's mental limitations and the impact they had on the determination that he is not disabled, the court focuses on the facts related to the same.

## A.    Medical Evidence

Claud's primary care physician, Dr. Vanessa Hagan, treated and monitored Claud's physical health conditions for years before prescribing Lexapro for depression in 2016 and Xanax for anxiety in 2017. (A.R. 338-66, 529-85, 601-63.) Records from Claud's cardiologist, Dr. Masood Qazi, reflect Claud's history of depression and anxiety and reveal that both were triggered or made worse because of his physical illnesses, the stress he experienced following his September 2016 DIB application, and his girlfriend's death in November 2017. (Id. at 665, 667.)

Other than the medication Dr. Hagan prescribed, Claud did not receive other mental health treatment during the relevant period. (Id. at 45.)

On November 22, 2016, reviewing psychologist Dr. Henry Fine conducted a consultative psychiatric evaluation in connection with Claud's DIB application. (Id. at 586-90.) Dr. Fine noted that Claud had a "history consistent with a depression, along with panic and some suicidality, secondary to the debilitating effects of his advancing medical issues." (Id. at 589.) Dr. Fine indicated that Claud was "continuing with treatment," and that his "medical issues [were] clearly primary for functional impact." (Id.) He documented Claud's report that: his mental health symptoms began a year earlier when he started "taking all this medication"; he was forgetful, had poor concentration and sleep, and had panic attacks nearly every day; and he was easily distracted. (Id. at 586-87.) After conducting various tests, Dr. Fine noted that Claud suffers from "immediate memory deficit" and "problems abstracting," pointing to, among other things, Claud's forward digit recall for four and five numbers but not for six, backward digit recall for three and four numbers but not for five, zero recall of five words after five minutes, lack of awareness of topical news items, and incorrect calculation of nine multiplied by four. (Id. at 588-89.) However, Dr. Fine also noted that Claud: was neatly groomed and appropriately dressed; was cooperative and behaved appropriately with appropriate affect; appeared to be able to manage his own funds; had "bodily activities" and psychomotor activity within normal limits; and demonstrated "no indication of delusions, confusions or hallucinations." (Id. at 587-89.) Ultimately, Dr. Fine

3

diagnosed Claud with "mixed affective disorder, including panic, secondary to general medical condition/mild to moderate with treatment." (Id. at 589.)

On January 9, 2017, reviewing psychologist Dr. David Voss opined in conjunction with Claud's DIB application that Claud was mildly restricted in three of four mental functioning areas known as the "paragraph B" criteria. Specifically, Dr. Voss concluded that Claud was mildly restricted in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and that Claud's mental impairments therefore were "non-severe." (Id. at 67-68.) In so concluding, Dr. Voss purported to afford great weight to Dr. Fine's findings, noting in particular that: the medical evidence documented a mood disorder "of mild to moderate severity, featuring depression and anxiety attacks" that was treated with medication; treatment resulted in some improvement in symptoms; and Claud experienced a "mildly depressed mood with no apparent symptoms of psychosis or a thought disorder," "mild concentration difficulties," and "mild to moderate immediate memory difficulties." (Id. at 68-69.) Dr. Voss also concluded that Claud's statements regarding his mental difficulties were not fully supported by medical evidence and only partially consistent with objective findings in his file, and that Claud experienced no episodes of decompensation. (Id.)

Four months later in May 2017, reviewing psychologist Dr. Gayle Williamson found on reconsideration that Claud suffers from non-severe depression and anxiety, was mildly limited in his ability to understand, remember, or apply

information and to interact with others, but was moderately limited in concentration, persistence, or maintaining pace. (Id. at 80.) Dr. Williamson assessed Claud as having a mental residual functional capacity ("RFC") with sustained concentration and persistence limitations and moderate limitations in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods, but with no significant limitations in the other concentration and persistence subcategories. (Id. at 84.) She concluded that it was "reasonable with physical health conditions/medications that [Claud] is experiencing a decreased ability to do cognitively complete multi-step tasks," but that he retained the capacity to: "understand, remember and concentrate sufficiently in order to carry out 1-2 step instructions/tasks and to sustain efforts for a normal work period"; "make simple work decisions" and interact and communicate with others in a work setting; and "adapt to simple, routine changes and pressures in the work environment." (Id. at 84-85.)

## B.  Hearing Testimony

Claud testified at the hearing that he was 56 years old, had two years of college credit, and had retired in December 2013 because of physical difficulties and pain. (A.R. 37, 40, 43.) He stated that he lives alone in an apartment building he purchased, and that he rents out the basement unit to his cousin. (Id. at 37, 39.) According to Claud, the rent is his only source of income, he is unable to pay his bills, and his electricity had been turned off as a result. (Id. at 38-39, 53.)

Claud testified that he worked for AT&T as a compliance analyst during the three-year period leading up to his retirement.  (Id. at 41-42.)  He described this work as fielding emergency calls and helping various police departments locate persons in life-and-death situations.  (Id.)  Before working as a compliance analyst, Claud processed court orders for electronically stored records on behalf of AT&T using the telephone and computer.  (Id. at 42-43.)  Claud testified that his mental capacity prevents him from working because he is disoriented and confused and sometimes forgets how to even get home.  (Id. at 45.)  In response to questions by the ALJ, Claud admitted that he had not sought treatment for his mental issues from any provider other than his primary care physician, and that his medications left him with unpleasant side effects, including nausea, lightheadedness, migraines, confusion, and joint pain.  (Id. at 45-47.)

Claud described his typical day as beginning between 5 and 6 a.m., when he takes medications, and that he takes eight more medications in the afternoon.  (Id. at 46-47.)  He testified that he does not sleep well because of migraines and pain in his back and shoulder.  (Id. at 47.)  He stated that his cousin cooks for him and he does not feel well enough to do much of anything during the day.  (Id. at 47-48.)  Claud testified that he hires someone to perform building maintenance when he can afford to do so and takes care of building problems and general chores only when he feels well enough.  (Id. at 48.)  He further testified that while he used to play cards and pool with others, he now plays pool by himself only occasionally.  (Id. at 48-49.)

A VE also testified at the hearing and described Claud's prior work as a dispatcher, performed at the light to sedentary level, and order clerk, performed at the sedentary level. (Id. at 55.) The ALJ then posed a series of hypotheticals to the VE regarding whether someone with a specific hypothetical RFC and Claud's age, education, and past jobs could perform Claud's past work. The first hypothetical concerned an individual with an RFC for light work and limitations including: occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional exposure to weather, extreme heat, extreme cold, wetness, and atmospheric conditions; and no exposure to unprotected heights or moving mechanical parts. (Id. at 57.) The VE testified that such a person could perform Claud's past work. (Id.) The second hypothetical individual included the same limitations as the first, except that the individual was limited to the sedentary exertional level. (Id. at 58.) The VE testified that such a person could perform Claud's past work. (Id.)

Finally, the ALJ posed a third hypothetical concerning an individual with the same limitations as the first, except that the individual also could understand, remember, and carry out only simple instructions, and make only simple work-related decisions. (Id. at 58-59.) The VE testified that such a person could not perform Claud's past work but could perform other jobs in the national economy, such as cafeteria attendant, marker, and assembler, all of which entail a light exertional level. (Id. at 59.)

C.    **The ALJ's Decision**

The ALJ engaged in the standard five-step evaluation process in considering Claud's DIB claim. *See* 20 C.F.R. § 404.1520(a).[3] At steps one and two the ALJ determined that Claud did not engage in substantial gainful activity between his December 31, 2013 disability onset date and the date of the ALJ's decision, and that Claud suffered from the severe physical impairments of hypertension, cardiomyopathy, and osteoarthritis of the low back. (A.R. 17.) The ALJ noted that the record included evidence of non-severe physical impairments such as diabetes that did not significantly impact Claud's ability to perform basic work activities. (Id.) Finally, the ALJ concluded that Claud's "medically determinable mental impairments of mixed affective disorder, including panic, secondary to general medical condition, considered singly and in combination do not cause more than minimal limitation in [Claud's] ability to perform basic mental work activities and are therefore nonsevere." (Id. at 17-18.) In so finding, the ALJ considered the four areas of mental functioning.

As to the first functional area—understanding, remembering, or applying information—the ALJ found that Claud had a mild limitation based on Dr. Fine's November 2016 evaluation. (Id. at 18.) In that evaluation Dr. Fine found that Claud was cooperative and had neat grooming, appropriate behavior, and no indication of delusions, confusion, or hallucinations, and that Claud correctly added

_____

[3] Amendments to the Social Security regulations regarding the evaluation of medical evidence were published on January 18, 2017. 92 FR 5844-84 (Jan. 18, 2017). Because the amendments apply only to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

five and three, named five large cities and his high school, and could give the number of weeks in a year. (Id.) The ALJ also pointed to a September 2015 function report in which Claud reported that he: had no problem bathing, dressing, and feeding himself or using the toilet; cared for his dog; was able to do light laundry and ironing; drove and shopped in stores and online; and read, watched television, played pool and cards, and spent time with others. (Id.) The ALJ likewise found that Claud was mildly limited in the second and third functional areas of interacting with others and concentrating, persisting, or maintaining pace, citing much of the same information, as well as Dr. Fine's November 2016 findings that Claud's psychomotor activity was within normal limits and that he could perform serial 7s to 100. (Id.) Finally, the ALJ concluded that Claud was not limited in the fourth functional area—adapting and managing oneself. (Id. at 19.) Citing Dr. Fine's November 2016 evaluation and the September 2015 function report, he concluded that Claud had "no problem with personal care" and noted Claud's hearing testimony that he rents out his basement to a cousin. (Id.)

At step three the ALJ determined that Claud's impairments were not of listings-level severity. (Id.) Before turning to step four, the ALJ determined that Claud retained the RFC to perform sedentary work, but was limited to: occasionally balancing, stooping, kneeling, crouching, crawling, and climbing stairs and ramps; never climbing ladders, ropes, or scaffolds; having occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, and atmospheric conditions; and having no exposure to unprotected heights or moving mechanical parts. (Id. at 20.)

9

In explaining his assessment, the ALJ pointed to the objective medical evidence of Claud's physical symptoms, including tests, reports, and imagery of his heart and spine, as well as physical examinations and the opinions of agency consultants. (Id. at 21-22.)

As for his evaluation of Claud's mental limitations, the ALJ indicated that he had given great weight to Dr. Voss's opinion that Claud's mental impairments were non-severe. (Id. at 21.) The ALJ noted that while Dr. Fine's November 2016 report (on which Dr. Voss's opinion was largely based) indicated that Claud had mixed affective disorder, it also stated that he: was cooperative; had appropriate behavior and good grooming; did not appear delusional, confused, or hallucinatory; had psychomotor activity within normal limits; did serial 7s from 100; could recall three out of three items and do simple arithmetic; had normal affect; and denied psychiatric hospitalization or suicidal ideation. (Id. at 22.) The ALJ also pointed to the September 2015 function report in which Claud indicated that he was able to care for himself, had hobbies, and was social. (Id.)

By contrast, the ALJ accorded little weight to Dr. Williamson's opinion that Claud could understand, remember, and concentrate for purposes of carrying out 1-2 step instructions, and make only simple work decisions, and adapt to only simple, routine changes and pressures in the work environment because these limitations were not well supported by the record. (Id.) In so finding, the ALJ pointed to the same information he cited when weighing Dr. Voss's opinion. (Id.) The ALJ also assigned little weight to Dr. Fine's November 2016 opinion that Claud's medical

issues "are clearly primary for functional impact," concluding that the opinion was "vague and does not describe the claimant's functional limitations in relevant functional terms."[4]  (Id. at 23.)  Based on this analysis, the ALJ concluded at step four that Claud was not precluded from performing his past relevant work.  (Id.) The ALJ thus denied Claud's claim.  (Id. at 24.)

## Analysis

Claud contends that the ALJ erred by: (1) giving more weight to reviewing psychologist Dr. Voss's opinion than to reviewing psychologist Dr. Williamson's opinion; (2) failing to account for Claud's mental limitations in his RFC; and (3) relying on Claud's daily activities to discount his subjective allegations regarding his symptoms.  (R. 19, Pl.'s Mem.)  When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence.  *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted).  This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing reversal "only if the record

---

[4]  The ALJ also considered the statements of Claud's nephew that were included in the September 2015 and October 2016 third-party function reports and assigned some weight to those statements that were based on firsthand observations of Claud's actual activities but only little weight to opinions regarding Claud's limitations because the nephew was not a medical source.  (A.R. 23.)

compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

## A.   Reviewing Psychologists' Opinions

Claud contends that the ALJ erred by giving great weight to reviewing psychologist Dr. Voss's opinion but only little weight to reviewing psychologist Dr. Williamson's opinion. An ALJ must consider various factors when weighing medical opinions, including: the length, nature, and extent of the treatment relationship; the supportability of the medical source's opinion; the consistency of the opinion with the record; and the source's specialization. 20 C.F.R. § 404.1527(c); *see also Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 746 (N.D. Ill. Feb. 21, 2019). In so doing, the ALJ "must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do," and adequately explain why he weighed an opinion in a particular way and in light of that record. *Murphy v. Astrue*, 454 Fed. Appx. 514, 518 (7th Cir. 2012) (quotations and citations omitted); *see also* 20 C.F.R. § 404.1527(b); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020).

Neither Dr. Voss nor Dr. Williamson treated or examined Claud, but both specialize in the mental health field. As such, only the supportability and consistency factors are relevant here. Claud correctly notes that generally, the more the evidence supports a medical opinion, the greater weight the opinion merits, 20 C.F.R. § 404.1527(c)(3), and from there argues that in assigning more weight to Dr. Voss's opinion, the ALJ failed to account for the aspects of the

November 2016 evaluation and other evidence of record that were favorable to Claud's claim for benefits. The court agrees. Indeed, the ALJ did not mention that Claud's November 2016 evaluation revealed difficulties with his memory. Specifically, Claud lacked the ability to perform forward digit recall for six numbers, backward digit recall for five numbers, and he could not remember any of the five test words after a five-minute interval. Nor did the ALJ mention that Claud could not identify a topical news item or correctly explain the meaning of common proverbs, or that Dr. Fine concluded that Claud demonstrated immediate memory deficit and problems with abstraction. Moreover, the ALJ cited Claud's September 2015 function report as evidence that he was able to care for himself and his pet, handle chores, prepare meals, and had hobbies including playing pool and cards with others. (A.R. 22 (citing id. at 232-35.)) But he overlooked more recent evidence to the contrary, including an October 2016 function report and Claud's hearing testimony, showing that he needs help preparing meals, is overwhelmed and anxious about completing chores and driving, suffers from frequent panic attacks, has difficulty concentrating and memory issues, no longer engages in his social hobbies, now takes medication for mental health problems, and at times is unable to recall how to get home. (Id. at 48-49, 277-85.)

While the government argues that an ALJ is not required to comment on every piece of evidence and that Claud would improperly require the court to re-weigh the evidence, (R. 25, Govt.'s Mem. at 8-9), those arguments fall flat. The issue here is not that the ALJ failed to discuss all evidence, but rather that he

selected for discussion only those aspects of the record that supported his decision. In doing so, the ALJ erred. *See Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) ("The ALJ may not select and discuss only that evidence that favors [his] ultimate conclusion but must confront the evidence that does not support [his] conclusion and explain why it was rejected.").

Such error means that it is not possible to determine whether the ALJ's conclusion that Claud is not disabled is supported by substantial evidence. *See Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) (ALJ's failure to consider contrary evidence "alone precludes us from 'evaluat[ing] . . . whether substantial evidence existed to support the ALJ's finding'") (quoting *Herron*, 19 F.3d at 334). Had the ALJ considered this unfavorable evidence, it is possible that: (1) the ALJ would have given Dr. Williamson's opinion more weight than he did; (2) the ALJ would have included mental limitations in Claud's RFC as Dr. Williamson opined was appropriate; and (3) the VE would have concluded that Claud could not have performed past or other work. As explained, the third hypothetical posed to the VE included an RFC with mental restrictions and with physical restrictions at the light exertional level. In response, the VE concluded that such a hypothetical person could not perform Claud's past work. Although the VE concluded that other work existed in the national economy that the hypothetical individual could perform, the examples given by the VE were at the light exertional level, not the sedentary level that the ALJ ultimately ascribed to Claud. As such, this court cannot say with great certainty that the VE would reach the same result if both mental limitations and

14

physical limitations at the sedentary level were included in the hypothetical. In short, had the ALJ considered the evidence that was favorable to Claud's disability claim, the outcome may have been different. As such, a remand is required so that the ALJ may consider and explain the implications of that evidence.

## B.     RFC Assessment

Relatedly, Claud claims that the ALJ erred when he failed to include mental restrictions in the RFC. Claud is correct that the ALJ did not include any non-exertional or mental restrictions in the RFC. But the government argues that the ALJ was not obligated to do so given his conclusion that Claud exhibited only mild limitations in concentration, persistence, or pace. (R. 25, Govt.'s Mem. at 9, 11-12.) The government points out that "mild" for these purposes means functioning that is only "slightly" limited and reiterates that the ALJ concluded—like Dr. Voss—that Claud's mental limitations were not severe. (Id. at 5, 10-11 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)).)

There are at least three flaws with the government's argument. First, the government's position ignores the ALJ's failure to consider the evidence that caused Dr. Williamson to conclude that Claud was moderately—not mildly—limited in concentration, persistence, or pace. Second, the government overlooks the ALJ's conclusion that Claud was also mildly limited in two other functional areas, namely interacting with others and understanding, remembering, or applying information. (A.R. 18.) Third, the government does not acknowledge that an ALJ must explain

his reasons for failing to include even non-severe, mild mental limitations in the RFC.

It is axiomatic that "[w]hen determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). This is because "[w]hile a non-severe impairment standing alone may not significantly limit an individual's ability to work, it 'may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'" *Pamela J.B. v. Saul*, No. 19 CV 6800, 2021 WL 963765, at *3 (N.D. Ill. March 15, 2021) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). Moreover, "[m]ental limitations must be part of the RFC, because '[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work.'" *Id.* (quoting C.F.R. § 404.1545(c)). Indeed, courts have held that even mild mental limitations of the type ascribed to Claud by Dr. Voss may limit a claimant's ability to perform the skilled or semi-skilled work in which Claud previously engaged. *See Lawrence J. v. Saul*, No. 19 CV 1834, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020) ("[E]ven mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work in skilled or semi-skilled positions."); *see also Nam v. Saul*, No. 19 CV 7832, 2020 WL 6781800, at *5 (N.D. Ill. Nov. 18, 2020) ("[E]ven mild limitations in understanding,

16

remembering, or applying information, concentrating, persisting, or maintaining pace, or social functioning could affect an individual's ability to perform . . . semi-skilled . . . clerk positions."). Accordingly, while an "RFC need not expressly refer to [a claimant's] mild difficulties with [mental function]," "it 'must clearly exclude those tasks' that [the claimant] cannot perform because of those difficulties." *Dawn W. v. Berryhill*, No. 17 CV 0190, 2019 WL 2085196, at *4 (N.D. Ill. May 13, 2019) (quoting *Paul v. Berryhill*, 760 Fed. Appx. 460, 465 (7th Cir. 2019)); *see also Cheryl C. v. Berryhill*, No. 18 CV 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) (ALJ erred in failing to "provide an evaluation and explanation of how, if at all, the mild [mental] limitations affected Plaintiff's RFC").

As discussed, the ALJ did not account for any mental limitations in Claud's RFC, despite finding that Claud was mildly limited in three of the four areas of mental functioning.[5] Nor did he adequately explain why he did not do so. Instead, the ALJ simply pointed to Dr. Voss's conclusion that Claud's mental limitations were not severe. But the "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). And the case for reversal is particularly compelling here because the ALJ

---

[5] The court notes that although the ALJ ultimately concluded that Claud was not limited in the fourth area of mental functioning—adapting or managing oneself—the ALJ's conclusion was based in part on Claud's September 2015 function report, from which the ALJ determined that Claud had "no problem with personal care." (A.R. 19.) But had the ALJ considered Claud's more recent function report from October 2016, his hearing testimony, and other record evidence appearing to show that Claud's mental health had since declined, he may have ascribed a limitation in this area as well.

concluded that Claud could perform his past work despite acknowledging at the hearing that this work was "mentally taxing." (A.R. 44.)

Claud argues that this error was not harmless, pointing to Social Security grids Table No. 1—Residual Functional Capacity: Maximum Sustained Work Capacity Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s) ("Table 1"), which he contends requires the ALJ to conclude that he is disabled. (R. 19, Pl.'s Mem. at 10-11.) Claud argues that he is properly characterized under Rule 201.14 of Table 1, which directs a finding of "disabled" when a claimant is found to be limited to sedentary work and: (1) is between the ages of 50 and 54; (2) is at least a high school graduate; and (3) has previous work experience classified as skilled or semiskilled but lacks transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The government does not respond to this argument. The court notes that Claud's age at the hearing (and now) places him within Rule 201.06 of the same table, but except for the age range, the specifications and directed result for that rule are the same. *See id.* It is clear from the record that Claud met the first and second requirements for the application of that rule, and that he previously performed skilled and semi-skilled work. But because the ALJ concluded that Claud could perform past work, he did not address whether Claud possessed relevant transferable skills. The court declines to make any assumptions in that regard. Accordingly, a remand is appropriate so that the ALJ can determine: (1) whether Claud's mental limitations should be reflected in the RFC (and if so, which limitations and why, or if not, why not); and (2) whether

Claud lacks "transferable skills" and must be declared "disabled" under Rule 201.06.

## C.    Subjective Symptom Assessment

Claud also argues that the ALJ's evaluation of his subjective symptom allegations was erroneous, as was the ALJ's failure to consider that Claud previously engaged in meaningful and relatively lucrative work in making that evaluation.   The court takes these contentions in turn.   Generally, an ALJ's symptom evaluation is entitled to great deference because the ALJ can observe the claimant's credibility firsthand.   *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014).   Accordingly, a reviewing court will not disturb the ALJ's evaluation provided it is logically based on specific findings and evidence in the record, and not "patently wrong."   *Id.* at 815-16.   However, the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence."   *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).   Instead, the ALJ must consider various factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing their severity.   SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).   At bottom, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal."   *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

The ALJ concluded that Claud's statements about the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record."   (A.R. 20.)   But he failed to adequately

explain why. Indeed, at the hearing, Claud testified that his mental impairments—disorientation and confusion—prevent him from working. (Id. at 45-46.) And while the ALJ acknowledged Claud's testimony that he experienced confusion and that he had been diagnosed with mixed affective disorder, he did not address Claud's allegation regarding disorientation. (Id. at 20, 22.) Further, as discussed *supra*, the ALJ's analysis was otherwise founded solely upon limited aspects of the record and ignored those aspects of the November 2016 consultative examination that ran contrary to the result he reached. The ALJ also relied on Claud's September 2015 function report as evidence of Claud's daily activities—including as mentioned to show that Claud was not limited in personal care, could care for a pet, drive, perform household chores, play cards and pool, and otherwise socialize with others. (Id. at 21-23.) But as discussed, the ALJ ignored the more recent evidence to the contrary and failed to discuss the fact that Claud takes two medications to combat his mental health issues.

Claud is also correct that the ALJ failed to explain why Claud "would have voluntarily terminated his employment, where, in some years, he earned in excess of $100,000 annually . . . unless he was no longer physically or mentally capable of performing work tasks." (R. 26, Pl.'s Reply at 10-11.) "An ALJ is not statutorily required to consider a claimant's work history, but 'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). And an ALJ's failure to consider

such a record bolsters the need for remand where the ALJ otherwise failed to provide substantial evidence to support his symptom assessment. *See id.* at 689. Here, the ALJ did not expressly acknowledge Claud's relatively lucrative past work, properly use the regulatory factors to support his adverse symptom assessment, or otherwise support his determination with substantial evidence. Remand is thus appropriate on this ground too.

## Conclusion

For the foregoing reasons, Claud's motion for summary judgment is granted, and the government's motion is denied. The matter is remanded for further proceedings consistent with this memorandum opinion and order.

ENTER:

Young B. Kim
United States Magistrate Judge